**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MICHELLE L. KIDDER, | Case No. 1:18-cv-661 |
| Plaintiff, | Cole, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Michelle L. Kidder filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed a Title II claim, for a period of disability and disability insurance benefits ("DIB"), alleging a disability onset date of March 12, 2004. (Tr. 40). After Plaintiff's claims were denied, both initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Tr. 17).

A hearing was held on August 30, 2017, in front of ALJ Elizabeth Motta, where Plaintiff appeared *pro se*. (Tr. 17). The ALJ heard testimony from Plaintiff and an impartial vocational expert, Brian L. Womer. (Tr. 17). On December 26, 2017, the ALJ

1

denied Plaintiff's application in a written decision. (Tr. 17-29). Plaintiff now seeks judicial review of the denial of her application for disability and DIB.

Plaintiff was born in 1972 and was 44 years old at the time the ALJ issued her written decision. (Tr. 20). She is a college graduate and a licensed practical nurse ("LPN"). (Tr. 20). Plaintiff has past relevant work experience as an LPN. (Tr. 20). She alleges disability based primarily on her physical impairments, with a minor focus on her mental impairments as well. (Tr. 20).

Based on the record and testimony presented at the hearing, the ALJ found Plaintiff has the following severe impairments: rheumatoid arthritis; cervical degenerative disc disease; obesity; bilateral carpal tunnel syndrome (with residual effects of surgery); left knee chondromalacia; depressive disorder; and anxiety disorder. (Tr. 21). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> (1) [L]ifting and carrying up to 20 pounds occasionally and 10 pounds frequently; (2) sitting, standing, and walking 6 hours each in an 8 hour workday; (3) occasional climbing of stairs, and ramps; [(4)] occasional balancing, stooping, kneeling, crouching, and crawling; [(5)] no climbing of ladders, ropes, or scaffolds; [(6)] no exposure to hazards such as dangerous machinery, unprotected heights, or driving as part of job duties; [(7)] no exposure to extremes of cold, heat, wetness, or humidity; [(8)] no exposure to vibration; [(9)] occasional use of foot controls on the left; [(10)] occasional bilateral overhead reaching but frequently in all other directions and frequent handling and fingering bilaterally; [(11)] no constant moving of the head up and down or side to side; [] [(12)] simple, repetitive tasks; [and] [(13)] low stress work defined as no strict production quotas or fast pace and only routine work with no frequent changes in the work setting.

(Tr. 23). Based on the record as a whole, including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (Tr. 27–28). While the ALJ found Plaintiff does not have "transferable" work skills within the meaning of the Social Security Act, the Judge nonetheless concluded that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 28). Such jobs include office helper, cashier, housekeeper, food order clerk, telephone quote clerk, and polishing machine operator. (Tr. 28–29). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Act and thus not entitled to DIB. (Tr. 29).

On August 7, 2018, the Appeals Council denied Plaintiff's request for review; thus, the ALJ's decision stands as the final determination. (Tr. 1–4). On appeal to this Court, Plaintiff argues that the ALJ erred: (1) in her evaluation of Plaintiff's symptom severity; and (2) in interpreting significant raw medical data and medical evidence in functional terms.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both SSI and DIB. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her

3

past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work;

4

and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs, which the claimant can perform, exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or a combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is substantially supported**

*1. Formulation of Plaintiff's RFC*

Plaintiff appears to argue that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ erred in evaluating Plaintiff's symptom severity. Specifically, Plaintiff appears to assert that the ALJ improperly evaluated Plaintiff's carpal tunnel syndrome. Plaintiff further argues the ALJ improperly relied on the state agency non-examiners who did not review the March 24, 2016 MRI of the cervical spine, which revealed discogenic disease.

Here, in formulating Plaintiff's RFC, the ALJ considered the medical and non-medical evidence and reasonably concluded that while Plaintiff had some limitations, she could perform a limited range of light work. (Tr. 23). The ALJ reached this finding by

considering the objective findings including treatment records from Plaintiff's physicians, medical opinions and Plaintiff's subjective statements. (Tr. 20-27).

As noted by the ALJ, the ALJ discussed Plaintiff's testimony noting that she alleged disability due to a knee chondromalacia on the left, rheumatoid arthritis (RA), bilateral carpal tunnel syndrome, obesity, depression, anxiety, cervical degenerative disc disease and fibromyalgia. (Tr. 20, citing Tr. 41, 43-44, 47-49). Second, the ALJ discussed Plaintiff's treatment history and noted that she took medication for her RA, participated in physical therapy and had surgery for her carpal tunnel syndrome. (Tr. 20, citing Tr. 48-49). However, the ALJ explained that Plaintiff's doctors did not recommend surgery for her neck or back. (Tr. 20). Third, the ALJ considered the medical evidence regarding Plaintiff's rheumatoid arthritis, cervical spine impairments, bilateral carpal tunnel syndrome and torn meniscus in her leg. (Tr. 20, referencing Tr. 412-13, 520, 588, 652, 689, 753).

The ALJ also properly considered the opinion evidence. The ALJ considered the medical opinions from the state agency physicians. The ALJ explained that their opinions—limiting Plaintiff to a reduced range of light work—were the only detailed, specific medical opinions in the record. (Tr. 24, citing Tr. 79-81, 94-96). Therefore, the ALJ gave great weight to the opinions of the state agency doctors (Tr. 24, citing Tr. 79-81, 94-96). However, the ALJ noted that the state agency physicians did not have evidence of Plaintiff's carpal tunnel condition. (Tr. 25).

The ALJ also discussed the treatment records of Mukarram Khan, D.O., another doctor who reviewed Plaintiff's MRI and EMG. (Tr. 21, citing Tr. 652). In August 2016, Dr. Khan reviewed the MRI and EMG and assessed Plaintiff with cervical impairments and

6

carpal tunnel syndrome. (Tr. 652). He advised Plaintiff to continue medications and follow up in 30 days. (Tr. 652-53). Several months later, John J. Lochner III, M.D., reviewed the EMG and noted that Plaintiff had "moderate carpal tunnel syndrome." (Tr. 580)

Although no physician indicated that the impairment caused any limitations, the ALJ evaluated the evidence that related to Plaintiff's carpal tunnel syndrome and limited her to frequent handling and fingering. (Tr. 23, 25, citing Tr. 48-49, 652, 665). The ALJ properly evaluated the medical and non-medical evidence and accounted for all of Plaintiff's limitations in the RFC finding.

Furthemore, Plaintiff argues that the ALJ failed to mention that the state agency physicians did not review the MRI of the cervical spine. Plaintiff appears to be citing the arguments made in *Blakely v. Commissioner,* 581 F.3d 399 (6th Cir.2009). In *Blakely,* the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." (*Id.,* at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakely,* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by *Blakely's* treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely,* 581 F.3d at 409 (quoting *Fisk v. Astrue,* 253 Fed.Appx. 580, 585 (6th Cir.2007)). Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused

7

if the error is harmless or *de minimis,* such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* at 409 (quoting *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 547 (6th Cir.2004)). Under *Blakely,* then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis. Swartz v. Astrue,* No. 10–605, 2011 WL 4571877, at *8 (S.D.Ohio Aug.18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir.2009)).

Here, there are no treating source opinions. Moreover, the ALJ explicitly noted that the State Agency "did not have evidence of the carpal tunnel condition" (Tr. 25). The ALJ noted that an EMG study showed moderate severity and also noted Plaintiff's testimony that she had carpal tunnel surgeries in October and December 2016. Based on this evidence, the ALJ added limitation to frequent handling and fingering to Plaintiff's RFC. *Id.* The ALJ properly considered the record evidence relating to Plaintiff's cervical impairment. In this regard the ALJ noted that she had an altered gait (Tr. 25, citing Tr. 652, 792) and the ALJ discussed Plaintiff's MRI and noted that Dr. Bouz said she only had "mild" canal stenosis and diffuse symptoms. (Tr. 25, citing Tr. 742). The ALJ also noted that an examination of her neck was normal by her doctor. (Tr. 25, citing Tr. 620, 625, 752). The ALJ discussed Plaintiff's knee impairment and noted that she had surgery in October 2014 and stopped working because of the condition. (Tr. 25, citing Tr. 43, 321).

8

Although there were some instances of an altered gait, the ALJ noted that on many occasions her gait was normal. (Tr. 25, citing see e.g., Tr. 665, 689). Lastly, the ALJ noted that Plaintiff did not require or use an ambulatory device and appeared normal at the hearing. (Tr. 25).

The ALJ's decision in this regard is substantially supported by the record evidence. *See also Turner v. Comm'r of Soc. Sec.*, 2018 WL 3544933 (S.D. Ohio July 24, 2018) ("[a]lthough [the state agency physicians] did not have access to the entire record at the time they authored their opinions, the ALJ properly considered, discussed, and analyzed more recent evidence in the record rather than adopting their opinions wholesale without further evidentiary review.").

The ALJ also properly considered Plaintiff's activities and noted that she maintained a household, cared for an ill teenage son, drove, cooked, cleaned, grocery shopped and attended church. (Tr. 27, citing Tr. 56, 58-59, 484). *See* 20 C.F.R. § 416.929(c)(3)(i) (daily activities considered); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir.2004) (The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.); *Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir.1990) (As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.)

In light of the foregoing, the ALJ reasonably evaluated the evidence in formulating Plaintiff's RFC.

9

*2. ALJ's Intepretation of Raw Medical Data*

Plaintiff also argues the ALJ interpreted raw medical data in medical terms and functional terms even though the ALJ is not qualified to interpret raw medical data in functional terms. Plaintiff cites to *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 914–15 (N.D. Ohio 2008) for this proposition. *Deskin* clarifies what the ALJ's limitations are:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself."

*Id.* at 912. *Deskin* goes on to state that an ALJ is able to "'render a commonsense judgment about functional capacity even without a physician[]'s assessment.' A functional capacity opinion from a medical source may not be necessary in every case." *Id.* (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)).

Furthermore, "[a]lthough the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Com'r of Soc. Sec.,* 342 Fed. Appx. 149, 157 (6th Cir.2009). Ultimately, the responsibility for determining a plaintiff's residual functional capacity rests with the ALJ. On the other hand, prior to assessing a plaintiff's residual functional capacity, the Defendant is "responsible for developing [the] complete medical history, including arranging for a consultative examination(s) if necessary...." 20 C.F.R. § 416.945(a)(3). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his

10

own evaluations of the medical findings. "The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Com'r of Soc. Sec.,* No. 1:07–cv–51, 2008 WL 1733181, at * 13 (S.D.Ohio April 14, 2008) (Beckwith, J, citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir.1963)).

Here, the ALJ did not interpret the medical findings, but instead cited to treatment records and objective evidence. Notably, the ALJ cited to treatment records where several physicians reviewed and discussed the diagnostic tests. (see Tr. 21 and 25). The ALJ referenced Dr. Bouz's treatment records and noted that he recommended conservative management and no surgery. (Tr. 21, citing Tr. 742). The ALJ also discussed the treatment records of Mukarram Khan, D.O., another doctor who reviewed Plaintiff's MRI and EMG. (Tr. 21, citing Tr. 652). In August 2016, Dr. Khan reviewed the MRI and EMG and assessed Plaintiff with cervical impairments and carpal tunnel syndrome (Tr. 652). He advised Plaintiff to continue medications and follow up in 30 days. (Tr. 652-53). Several months later, John J. Lochner III, M.D., reviewed the EMG and noted that Plaintiff had "moderate carpal tunnel syndrome." (Tr. 580). He discussed surgery with Plaintiff and told her that the carpal tunnel syndrome did not explain all her symptoms but that surgery could relieve the hand pain and hopefully restore sensation. (Tr. 580).

Thus, as noted by the Commissioner, several physicians reviewed the MRI and EMG, and the diagnostic tests and, therefore, the ALJ did not interpret "raw medical data." See *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 727 (6th Cir. 2013) ("Furthermore, the ALJ did not interpret raw medical data beyond her ability. The x-rays of Rudd's hands and lumbar spine, which were the only raw medical data, had already been read and

11

interpreted by a radiologist."); *Hotain v. Comm'r of Soc. Sec.*, 2018 WL 1061192, *5 (S.D. Ohio Feb. 27, 2018) ("The ALJ did not interpret 'raw medical data' to find that Plaintiff could engage in a restricted range of light work, but instead relied on the specific opinion of Dr. Ranganathan and his review of the radiologist's reports interpreting the MRIs and x-rays.").

Accordingly, reviewing the record as a whole, the undersigned concludes that substantial evidence exists to affirm the ALJ's decision.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

   *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHELLE L. KIDDER,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:18-cv-661

Cole, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).